UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GISSIM, INC. d/b/a SURF MANOR HOME
FOR ADULTS,

               Plaintiff,                         MEMORANDUM AND ORDER
                                                                        16-CV-03306

   - against -

SCOTTSDALE INSURANCE COMPANY,

               Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Gissim, Inc. d/b/a Surf Manor Home for Adults ("Surf Manor" or "Plaintiff") brought this breach of contract action against Defendant Scottsdale Insurance Company ("Scottsdale" or "Defendant"), seeking (1) a declaratory judgment that Scottsdale has a duty to defend and indemnify Surf Manor in an underlying action and (2) reimbursement for costs and expenses already incurred for Surf Manor's defense in that action. (Declaration of Todd D. Kremin ("Kremin Decl."), Exhibit A ("Compl.").  On May 1, 2017, Scottsdale moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and on June 30, 2017, Surf Manor cross-moved pursuant to the same.  (ECF Nos. 27, 31).  For the reasons explained below, Scottsdale's motion is **DENIED** and Surf Manor's cross-motion is **GRANTED**.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

**The Policy**

      Surf Manor operates an adult care facility in Kings County, New York, and provides long-term residential care, room, board, housekeeping, personal care, and supervision to its residents. (Declaration of Robert Margulies ("Margulies Decl."), Exhibit B).  Scottsdale is an insurance

1

company and issued Policy No. OPS0066840 to Surf Manor (the "Policy"), which provides both general and professional liability coverage. (Compl. ¶ 3). The general liability section of the Policy provides that Scottsdale has the duty to defend any lawsuits and indemnify any sums that Surf Manor becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury." (Margulies Decl., Exhibit A). The Policy defines those terms as follows:

"Bodily injury":

a. Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these . . . .

"Property damage":

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses . . .

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor . . . .

(Margulies Decl., Exhibit A (CGL Coverage Part and General Liability Extension Endorsement)).

Further, the professional liability section of the Policy provides:

We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT** . . . .

We will have the right and duty to select counsel and to defend any **SUIT** seeking **DAMAGES**.

(Margulies Decl., Exhibit A). The Policy defines **DAMAGES** as a "monetary judgment, award or settlement . . ." and **WRONGFUL ACT** as "any act, error or omission in the furnishing of

2

professional healthcare services. It includes the furnishing of food, beverages, medications, or appliances in connection with those services." (*Id.*).

**The Underlying Action**

In May, 2012, four of Surf Manor's residents filed a class action suit in the Supreme Court of New York, Kings County, alleging breach of contract, social services, human rights, and implied warranty of habitability claims because Surf Manor subjected them to "dangerous and uninhabitable living conditions" resulting in "pervasive bed bug and scabies infestations, filth and neglect, and a constellation of repeated and ongoing health and building code violations" (the "Underlying Action"). (Margulies Decl., Exhibit B). The plaintiffs further alleged, among other things, that Surf Manor failed to: diagnose residents suffering from scabies, conduct timely resident evaluations, provide appropriate health care and case management services, assist residents to arrange for those healthcare services and provide timely transportation, respect residents' right to privacy in their rooms and in caring for their personal needs, and provide safety and security to the residents. (*Id.*) In their claim for relief, they sought an award of "compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial . . . and such further relief as this Court deems just and proper." (*Id.*).

Scottsdale agreed to defend and indemnify Surf Manor pursuant to the Policy, subject to a reservation of rights "to deny coverage in the future based on the application of certain terms and conditions of the policy." (Declaration of Robin D. Donoian ("Donoian Decl."), Exhibit C).

**Scottsdale's Denial of Coverage**

Norman Bloomfield is the only remaining plaintiff in the Underling Action and was deposed on February 10, 2015. (Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def. Rule 56.1") ¶ 30). When asked if he was "seeking any monetary damages," he

3

testified "I'm not . . . In general, I don't think there's any request for financial damages of residents as a whole." (Def. Rule 56.1 ¶ 20). Six months later, on September 22, 2015, Scottsdale informed Surf Manor that it would no longer defend the Underlying Action because

> [a]s the testimony excerpt[] above clearly demonstrate[s], the remaining plaintiff[] in the Underlying Action [] affirmatively and explicitly testified that [he] is not seeking damages . . . there is no coverage under the PL Coverage Part because this matter does not involve any loss that could subject the Insured Defendants to pay DAMAGES, as that term is defined by the PL Coverage Part. Accordingly, Scottsdale does not have any obligation to defend or indemnify the Insured Defendants.

(*Id.* ¶ 22). Surf Manor asked Scottsdale to reconsider its coverage denial because Bloomfield's supplemental interrogatory responses dated November 3, 2015, indicated

> These harms constitute losses in the form of the diminished value of Mr. Bloomfield's resident agreement with Surf Manor. The amount of these losses will be decided at trial, but will not exceed $100,214.00 which is the amount Mr. Bloomfield has paid to Defendants for room and board for the period January 1, 2009 through November 30, 2015.

(*Id.* ¶ 24). Scottsdale confirmed its coverage position because Bloomfield was only seeking damages for the diminished value of his contract with Surf Manor, and those damages were not the result of "bodily injury," "property damage," or "personal or advertising injury" and they did not constitute **DAMAGES** as that term is defined in the policy.

On July 1, 2016, Bloomfield submitted an affidavit in the Underlying Action setting forth new allegations including lack of heat in his room, failure to take preventative action resulting in a fractured rib, noxious odors on the premises, broken showers and toilets, the presence of mice, trespass by Surf Manor employees, and doors without locks resulting in theft. Bloomfield has not yet requested relief for these new claims, but Scottsdale stands by its coverage denial.

## LEGAL STANDARD

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.* at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Where, as here, cross-motions for summary judgment are made, the court must rule on each party's motion

on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard. *Johnson & Johnson Fin. Corp. v. BSR Realty L.P.*, No. CV-96-0527 (ILG), 1996 WL 546284, at *2 (E.D.N.Y. Sept. 19, 1996).

## DISCUSSION

### I. New York Insurance Law § 3420

Surf Manor argues that because Scottsdale waited to deny coverage until six months after Bloomfield's deposition testimony, its disclaimer was untimely under New York Insurance Law § 3420(d)(2), which provides "if under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." Surf Manor's reliance on this statute is misplaced. The New York Court of Appeals construed the language "denial of coverage" to apply only "to those instances in which insurance covering the event could be said to exist but for some nonpayment of premiums, cancellation, or other exclusion that would arguably defeat such coverage." *Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-cv-2466 (ARR), 2014 WL 639420, at *9 (E.D.N.Y. Feb. 18, 2014) (citing *Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982)). Those circumstances are not present here. Scottsdale is not denying coverage based on an exclusion in the Policy, it is denying coverage because it claims the type of damages sought in the Underlying Action are not covered by the Policy in the first place. Therefore, New York Insurance Law § 3420(d)(2) is not applicable here.

## II. Scottsdale's Duty to Defend the Underlying Action

Under New York law, "the insurer's duty to furnish a defense is broader than its obligation to indemnify." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001). "So long as the claims asserted against the insured may rationally be said to fall within policy coverage, whatever later may prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." *Id.* The duty exists even if facts outside the four corners of the pleadings in the underlying lawsuit indicate that the claim may be meritless or not covered. *Stein v. N. Assur. Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015). However, "the insurers duty to defend is . . . not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Id.* In other words, where an insurer's duty to defend turns on an unresolved factual dispute, "the duty to defend only lasts until the factual ambiguity is resolved in favor of the insurer." *Id.* at 30-31.

Scottsdale first denied coverage because Bloomfield testified that he was not seeking monetary damages from Surf Manor. Even if Bloomfield's testimony unequivocally showed that the relief requested in the Underlying Action was outside the scope of the Policy, Bloomfield later stated in his supplemental interrogatories that he is seeking monetary damages. Scottsdale now argues that those damages are not covered by the Policy because Bloomfield limited his recovery to $100,214.00 for "diminished value of [his] resident agreement with Surf Manor," which constitutes purely economic damages resulting from a breach of contract.

In determining whether an insurer has a duty to defend, the Court must "compare the allegations in the complaint to the provisions of the insurance contract" and then the question becomes "whether the allegations are covered by one of the exclusionary provisions of the contract, thus relieving [an insurer] of its duty to defend." *Silverman Neu, LLP v. Admiral Ins.*

7

*Co.*, 933 F. Supp. 2d 463, 476 (E.D.N.Y. 2013). The complaint in the Underlying Action makes numerous allegations of "bodily injury," "property damage," and "personal and advertising injury," which are all covered by the Policy. Scottsdale does not claim there is an exclusionary provision in the Policy that applies here. That Bloomfield also alleges a breach of contract claim does not diminish Scottsdale's duty to defend. *Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 471 (S.D.N.Y. 2009). While, if proven, such breach of contract claim might not give rise to a duty to indemnify, the duty to defend "requires only that the complaint include *any* facts or grounds which bring the action within the protection purchased." *Id.* (emphasis in original); *see also Narragansett Elec. Co. v. Am. Home Assur. Co.*, 999 F. Supp. 2d 511, 521 (S.D.N.Y. 2014) ("[T]he duty to defend is triggered at the commencement of the case based on the allegations in the complaint" and "[a]n insurer must defend the entire action if any claims appears to be covered.").

Further, Bloomfield made additional allegations consisting of a fractured rib, noxious odors, broken showers and toilets, the presence of mice, trespass by Surf Manor employees, and doors without locks resulting in theft. While he has not yet requested relief for those allegations, Surf Manor cannot claim that those allegations do not meet the definitions of "bodily injury," "property damage," or "personal and advertising injury" under the Policy. Accordingly, Scottsdale has a duty to continue to defend the Underlying Action.

### III. Scottsdale's Duty to Indemnify the Underlying Action

"While the duty to defend is measured against the allegations of pleadings, [] the duty to [indemnify] is determined by the actual basis for the insured's liability to a third person." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014). In other words, "[t]he narrower duty to indemnify arises only if the claim for which the insured has been judged liable

lies within the policy's coverage." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013). If Surf Manor is found liable for Bloomfield's human rights, social services, and implied warranty of habitability claims based on his "bodily injury," "property damage," or "personal and advertising injury" allegations, Scottsdale has a duty to indemnify any damages awarded. Similarly, if Surf Manor is found liable for "any act, error or omission in the furnishing of professional healthcare services," Scottsdale is liable to pay monetary damages awarded for each **WRONGFUL ACT**. Bloomfield's capping of his damages in his supplemental interrogatories does not change the outcome.[1]

## CONCLUSION

Accordingly, for the reasons set forth above, Scottsdale's motion for summary judgment is **DENIED** and Surf Manor's cross motion is **GRANTED**. Surf Manor is directed to submit evidence reflecting the costs and expenses already incurred and not paid by Scottsdale for its defense in the Underlying Action.

SO ORDERED.

Dated: Brooklyn, New York
November 7, 2018

/s/ _____
I. Leo Glasser          U.S.D.J.

---

[1] Scottsdale does not have a duty to indemnify any damages awarded as a result of Bloomfield's breach of contract cause of action and Surf Manor does not contend otherwise.